KATZMELINGER
280 MADISON AVENUE, SUITE 600
NEW YORK, NEW YORK 10016
www.katzmelinger.com

Nicole Grunfeld  
Katz Melinger PLLC

t: 212.460.0047  
f: 212.428.6811  
ndgrunfeld@katzmelinger.com

March 8, 2021

**Via ECF**
Honorable Douglas E. Arpert
United States District Court
District of New Jersey
402 East State Street
Trenton, New Jersey 08608

  Re: *Raul Criollo v. Spain 92, Inc. et al.*
     **Civil Action No. 3:19-CV-18134**

Your Honor:

  We are attorneys for the plaintiff, Raul Criollo ("Plaintiff"), and write jointly with counsel for defendants Spain 92, Inc. ("Spain 92"), Sergio Seijas, and Jose R. Feijoo (improperly pled as "Manolo") (collectively the "Defendants") to seek approval of their agreement to settle Plaintiff's claims, which include claims for overtime violations pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a(4) ("NJWHL"); and failure to timely pay wages pursuant to the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, *et seq.* ("NJWPL"). Plaintiff and Defendants write to respectfully request that the Court approve the settlement agreement between them, a copy of which is attached hereto as **Exhibit 1**, and allow them to discontinue the matter with prejudice, pursuant to Fed. R. Civ. P. 41 (a)(2).

  1. **Summary of Plaintiff's Claims**

  This matter arises out of Plaintiff's employment with Defendants. Plaintiff alleges that he was employed by Defendants as a cook from in or around 2011 until on or around February 3, 2019. As a cook, Plaintiff's principal job duties included helping the chef prepare food, chopping vegetables, maintaining inventory of food items, placing orders for food items, working alongside other cooks employed by Defendants, and cleaning his work area. Throughout his employment with Defendants, Plaintiff alleges that he regularly worked six (6) days per week, for an average of approximately fifty-four (54) hours per week. Plaintiff alleges that throughout his employment, he was compensated at a fixed weekly salary, ranging from $790.69 to $915.69, regardless of the number of hours that he worked each week, and that he was not paid any overtime wages.

**2. Defendants' Position**

Defendants adamantly deny any and all wrongdoing and allege that Plaintiff was properly compensated for all hours worked. While Plaintiff and Defendants continue to express opposing views on the likely outcome of this matter, they understand that the complex factual issues in this matter would likely require a trial, and that each of them would expend significant time and costs to prepare for trial. While Plaintiff and Defendants have agreed to a settlement, there remains significant disagreement over the amount of alleged overtime hours worked by Plaintiff and the amount that Plaintiff was compensated. With such uncertainty on both sides, the risk to Defendants of a substantial judgment against them, the risk to Plaintiff of failing to prevail on all of his claims, and the risk to Plaintiff of being unable to enforce a judgment against Defendants who may be unable to satisfy a large judgment, the amount agreed to by Plaintiff and Defendants represents a fair and reasonable settlement at such an early stage of the litigation.

**The Proposed Settlement Should Be Approved**

1. The Settlement Resolves Bona Fide Disputes and is Fair and Reasonable to Plaintiff

To approve an FLSA settlement agreement in the Third Circuit, the court must determine whether "the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Davis v. Essex Cty.*, 2015 WL 7761062, at *2 (D.N.J. Dec. 1, 2015) (internal quotations and citations omitted). "In determining whether the compromise resolves a bona fide dispute, the Court must be reassured that the settlement 'reflect[s] a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching,' and the bona fide dispute must be determined to be one over 'factual issues' not 'legal issues such as the statute's coverage or applicability.'" *Brumley v. Camin Cargo Control, Inc.*, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (citations omitted). District courts in the Third Circuit typically consider the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975) in determining whether a FLSA settlement is fair and reasonable. *Cruz v. JMC Holdings, Ltd.*, 2019 WL 4745284, at *4 (D.N.J. Sept. 30, 2019). Those factors are: "...(1) the complexity, expense and likely duration of the litigation ...; (2) the reaction of the class to the settlement ...; (3) the stage of the proceedings and the amount of discovery completed ...; (4) the risks of establishing liability ...; (5) the risks of establishing damages ...; (6) the risks of maintaining the class action through the trial ...; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ...; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation ...." *Id.* (citing *Girsh*, 521 F.2d at 157).

The proposed settlement agreement between Plaintiff and Defendants reflects a reasonable compromise of bona fide disputes regarding Plaintiff's claims, rather than a mere waiver of statutory rights brought about by Defendants' overreaching. To the contrary, Plaintiff is represented by competent counsel and the proposed agreement resolves bona fide disputes as to Plaintiff's ability to recover unpaid overtime wages and other damages.

Moreover, the proposed settlement agreement is fair and reasonable to Plaintiff. The settlement amount, $92,500.00, results in a recovery to Plaintiff of $59,531.35, after expenses and

proposed attorneys' fees. This sum is fair and reasonable given the early stage at which the settlement was reached; the risk that Plaintiff would not prevail on all of his claims after a trial; and the fact that Plaintiff will receive the entire settlement amount shortly after the Court's approval of the settlement agreement. Furthermore, Plaintiff and Defendants engaged in extensive negotiations and, through informal discovery, gathered and exchanged information relevant to the claims and defenses in this matter; they can therefore accurately assess the strengths and weaknesses of the asserted claims and their respective positions. *Cruz*, 2019 WL 4745284, at *5 (concluding that the parties appreciated the merits of the case because, *inter alia*, the parties engaged in informal discovery of relevant documents and various arm's-length negotiations). Although Plaintiff and Defendants hold opposing views on the merit and value of Plaintiff's claims, the arm's length bargaining between such represented parties, along with the information shared uncovered through informal discovery, weigh in favor of finding the settlement reasonable.

2. The Settlement Furthers the Implementation of the FLSA

As further explained above, Plaintiff and Defendants hold opposing views on the merit and value of Plaintiff's claims. Given Defendants' claims that Plaintiff was paid for all hours worked, there is a risk to Plaintiff that he will be unable to prevail on any of his claims if a fact finder were to determine that Defendants' defenses are convincing. By reaching a settlement with Defendants, Plaintiff avoids the substantial risk of receiving an unfavorable outcome in this matter. Furthermore, the agreement provides that Plaintiff will receive the entire settlement amount in one lump sum payment shortly after the Court's approval of the proposed settlement agreement, which is highly favorable to Plaintiff.

Lastly, the proposed settlement agreement between Plaintiff and Defendants is devoid of any provisions that would frustrate the implementation of the FLSA. Specifically, the proposed agreement's confidentiality provision is narrowly drawn, and only limits disclosure of the negotiations with respect to the agreement. Thus, the clause restricts Criollo from publicizing negotiations, but does not prohibit him or others from discussing the underlying facts or the terms of settlement with other employees of Defendants. A limited confidentiality provision, such as this one, has been found to not frustrate the goals of the FLSA. *See Atis v. Freedom Mortg. Corp.*, No. CV 15-03424 (RBK/JS), 2018 WL 5801544, at *4 (D.N.J. Nov. 6, 2018). Furthermore, the proposed agreement's release clause is limited in scope, as Plaintiff is only releasing claims related to this action. Specifically, the proposed agreement identifies that the releases and waivers in the agreement apply to the FLSA, NJWHL, and NJWPL. This district has found that such a limited release clause does not frustrate the purposes of the FLSA. *See Cruz v. JMC Holdings, Ltd.*, No. CV169321KSHCLW, 2019 WL 4745284, at *8 (D.N.J. Sept. 30, 2019) (approving a release that was limited to the claims asserted in the action).

3. Plaintiff's counsels' fees are reasonable

Plaintiff and his counsel maintain that the proposed amount of attorneys' fees is also fair and reasonable. "[T]he percentage-of-recovery method has been accepted as an established approach to evaluating the award of attorneys' fees in the Third Circuit." *Brumley*, 2012 WL 1019337, at *9. Under the percentage-of-recovery method, fee awards ranging from 19 percent to 45 percent of the settlement fund have been deemed reasonable. *Id.* at *12; *see also, Davis*, 2015

WL 7761062, at *5. Under the proposed agreement between Plaintiff and Defendants, Plaintiff's counsel would recover $702.98 [1] as reimbursement for costs and expenses, and $32,265.67 in fees. Under Plaintiff's contingency fee agreement, Plaintiff's counsel is entitled to recover out of Plaintiff's settlement amount fees totaling one-third (1/3) of any amounts recovered on behalf of Plaintiff, as well as costs and expenses, which is reasonable. *Brumley,* 2012 WL 1019337, at *12 ("Counsel's request for one-third of the settlement fund falls within the range of reasonable allocations in the context of awards granted in other, similar cases").

Moreover, a lodestar crosscheck also supports Plaintiff's counsel's fee request. As indicated by Plaintiff's counsel's time records, attached hereto as **Exhibit 2**, Plaintiff's counsel has spent a total of 75.20 hours on this matter as follows: Nicola Ciliotta, 58.70 hours; Nicole Grunfeld, 16.20 hours; Adam Sackowitz, 0.20 hours; and Kenneth Katz, 0.10 hours. Plaintiff's counsels' hourly rates – $285.00, $435.00, $375.00, and $500.00, respectively – are reasonable based on their experience and are in line with the rates charged by attorneys in this district. *Santiago v. Lucky Lodi Buffet Inc.*, 2016 WL 6138248, at *4 (D.N.J. Oct. 21, 2016) (approving an hourly rate of $450.00 per hour for a law firm partner and $375.00 per hour for an associate with approximately 4 years of employment law experience); *see also*, *Jian Zhang v. Chongqing Liuyishou Gourmet NJ Inc*, 2019 WL 6318341, at *4 (D.N.J. Nov. 26, 2019) (approving an hourly rate of $550.00 per hour for a law firm partner and $350.00 for a managing associate); *Punter v. Jasmin Int'l Corp.,* 2014 WL 4854446, at *7 (D.N.J. Sept. 30, 2014) (approving an hourly rate of $300.00 per hour for an associate with "over two years of litigation experience and a substantial portion of his practice relates to representation of employment matters").

Mr. Ciliotta earned his B.A. from Vanderbilt University in 2015 and his J.D. from Penn State Law School in 2018; he was admitted to practice in New York in 2019 and is pending admission in New Jersey. Since joining Katz Melinger PLLC in 2018, Mr. Ciliotta has focused his practice on all aspects of employment litigation, with a particular focus on wage and hour cases.

Ms. Grunfeld has been the senior associate at Katz Melinger PLLC for more than seven years. She earned her B.A. in 1998 from Yale University, and her J.D. in 2004 from New York University School of Law. Ms. Grunfeld was admitted to practice in the courts of New York in 2005 and New Jersey in 2018, and has focused on Plaintiff's employment matters for more than twelve years. She currently serves as Vice President of the Board of the New York chapter of the National Employment Lawyers Association.

Mr. Sackowitz was admitted to the Bars of the states of California in 2014, New York in 2015, and New Jersey in 2016, and has focused his practice on employment law for more than five years. Mr. Sackowitz earned his B.S. from Cornell University in 2009 and his J.D. from the University of California at Los Angeles School of Law in 2014.

Mr. Katz is the sole member of Katz Melinger PLLC. Mr. Katz earned his B.A. in 2000 from the State University of New York at Albany, and his J.D. in 2003 from Hofstra University School of Law, with an award recognizing his achievements in the employment law field. Mr.

---

[1] The costs and expenses are as follows: $400.00 for the filing fee; $269.48 for translation fees; and $33.50 for travel expenses.

Katz was admitted to practice in the courts of New York in 2004 and New Jersey in 2016, and has focused his practice in litigation since 2003.

The $32,265.67 fee sought by Plaintiff's counsel reflects a 1.35 multiplier of Plaintiff's counsel's "lodestar" amount of $23,851.50, which is reasonable. *See e.g. Bredbenner v. Liberty Travel, Inc.,* No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011) (approving a 1.88 multiplier); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) (noting that "[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (internal citations omitted). As set forth herein, Plaintiff's counsel negotiated a highly favorable settlement for Plaintiff, in which Plaintiff recovered a substantial portion of his alleged damages and will avoid the significant risk of either receiving an unfavorable outcome in this matter or, if Plaintiff ultimately prevailed in his claims, attempting to enforce a judgment against Defendants who may be unable to satisfy a large judgment.

Additionally, we respectfully note that Plaintiff's counsel routinely recovers awards of attorneys' fees well below its lodestar amount in similar cases that do not settle on such favorable terms. This risk, which is inherent in cases in which counsel agrees to represent a client on a contingency basis, necessarily warrants that counsel occasionally recover attorneys' fees in excess of its lodestar amount. *See e.g. Bredbenner,* 2011 WL 1344745, at *22 (approving a 1.88 multiplier partly because it was a reflection of the risks assumed by counsel in taking the case on a contingency basis).

Accordingly, Plaintiff and Defendants respectfully request judicial approval of their proposed settlement agreement, and further request permission to submit a stipulation of discontinuance with prejudice consistent with the requirements of Fed. R. Civ. P. 41(1) (a) (ii) as to Defendants.

|  |  |  |  |
|---|---|---|---|
| KATZ MELINGER PLLC | | GENOVA BURNS LLC | |
| By: | /s/ *Nicole Grunfeld*<br>Nicole D. Grunfeld<br>280 Madison Avenue, Suite 600<br>New York, New York 10016<br>T: (212) 460-0047<br>Ndgrunfeld@katzmelinger.com<br>*Attorneys for Plaintiff* | By: | /s/ *Peter Berk*<br>Peter Berk<br>494 Broad St<br>Newark, New Jersey 07102<br>T: (973) 535-7118<br>PBerk@genovaburns.com<br>*Attorneys for Defendants* |